1

2

3

4                      UNITED STATES DISTRICT COURT

5                          DISTRICT OF NEVADA

6                                 * * *

7   OFFERHUBB.NET, INC. and                    Case No. 2:14-cv-00190-RFB-GWF
    DAVID FLYNN,
8                                                      **ORDER**
                  Plaintiffs,
9
          v.
10
    FUN CLUB USA, INC., ROBERT
11  CRADDOCK, AND SYLVIA SALGADO
    CRADDOCK,
12
                  Defendants.
13

14         Before this Court are three motions: Plaintiffs OfferHubb.net, Inc. and David Flynn's

15  Motion for Leave to Amend Complaint and for Joinder of Additional Defendant, ECF No. 12;

16  Defendants Fun Club USA, Inc., Robert Craddock, and Sylvia Craddock's Counter-Motion to

17  Dismiss, ECF No. 14; and Defendants Fun Club USA, Inc., Robert Craddock, and Sylvia

18  Craddock's Counter-Motion to Compel Arbitration, ECF No. 15.[1]  For the reasons discussed

19  below, the motion for leave to amend is granted, the motion for dismissal is denied, and the

20  motion to compel arbitration is granted in part and denied in part.

21

22  **I.     Background**

23

24         **A.  Factual**

25         OfferHubb.net, Inc. ("OfferHubb") and David Flynn (collectively "Plaintiffs") allege that

26

27         [1] Though Fun Club USA, Inc. was a moving party at the time these motions were filed,
    default was subsequently entered against Fun Club USA, Inc.  Order, ECF No. 28.
28  Consequently, the motions will be decided with regard to Defendants Robert Craddock and
    Sylvia Craddock.

on or about November 29, 2012, they entered into a contract (the "Contract") with Fun Club USA, Inc. ("Fun Club") and Robert Craddock for the purpose of performing marketing services for OfferHubb.  The Contract included an arbitration agreement.  Plaintiffs allege they paid a total of $120,000 in compensation for these services.  Plaintiffs further allege that Fun Club and Robert Craddock did not conduct the required marketing efforts in an ethical and honest manner and did not perform certain other services required by the Contract.

After OfferHubb notified Fun Club on or about July 11, 2013, of its decision not to renew the Contract, Plaintiffs claim Fun Club, Robert Craddock, and Sylvia Craddock engaged in various activities disparaging and harmful to Plaintiffs.

**B.  Procedural**

On February 5, 2014, Plaintiffs filed in this Court the instant complaint against Fun Club USA, Inc., Robert Craddock, and Sylvia Salgado Craddock (collectively "Defendants"), alleging eleven claims for relief: cybersquatting, statutory trademark infringement, wrongful use of computer, common law trademark infringement, statutory misappropriation of trade secret, common law misappropriation of trade secret, wrongful interference with economic relations, breach of contract, unjust enrichment, defamation, and piercing the corporate veil/alter ego.  ECF No. 1.  Defendants answered on February 27.  ECF No. 9.

On March 14, 2014, Plaintiffs moved to amend their complaint to, among other things, join Theodore F. Zentner as a party defendant.  ECF No. 12.  On March 31, Defendants responded and counter-moved to dismiss and to compel arbitration.  ECF Nos. 13, 14, 15.

On May 7, 2014, a discovery and scheduling order was issued.  ECF No. 21.

On July 22, 2014, Defendants' attorneys moved to leave to withdraw.  ECF No. 22.  Fun Club failed to comply with court orders to retain new counsel, ECF Nos. 23 and 25, and, on February 4, 2015, this Court struck Fun Club's answer[2] and ordered default entered against Fun Club.  ECF No. 28.

---

[2] Because Defendants Fun Club, Robert Craddock, and Sylvia Salgado-Craddock jointly filed the Answer, the Court permitted the Answer to remain on the docket but be disregarded to the extent that it applied to Fun Club.

**II.      Counter-Motion to Compel Arbitration**

**A.  Legal Standard**

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA provides two methods for enforcing arbitration: (1) an order compelling arbitration of a dispute; and (2) a stay of pending litigation raising a dispute referable to arbitration.  9 U.S.C §§ 3, 4.

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  The FAA limits the district court's role to determining (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue.  Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014).  "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).  Thus, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms." Republic of Nicar. v. Std. Fruit Co., 937 F.2d 469, 475 (9th Cir.1991).  However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986), (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)).

The determination of whether a particular issue should be determined by the arbitrator rather than the court is governed by federal law.  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  However, when deciding whether the parties agreed to

1   arbitrate a certain matter, courts generally apply ordinary state law principles of contract

2   interpretation.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

3          Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a

4   case are within the reach of an arbitration agreement.  9 U.S.C. § 3.  Although the statutory

5   language supports a mandatory stay, the Ninth Circuit has interpreted this provision to allow a

6   district court to dismiss the action.  See Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th

7   Cir. 1988).  A request for a stay is not mandatory.  Martin Marietta Aluminum, Inc. v. Gen. Elec.

8   Co., 586 F.2d 143, 147 (9th Cir. 1978).

9

10                    **B.  Compelling Arbitration**

11          Because the parties do not challenge the validity of arbitration agreement within the

12   Contract, the FAA restricts the Court to deciding only whether the disputes at issue in this case

13   fall within the scope of the parties' agreement to arbitrate.

14          The parties' arbitration clause is plain and short: "Any disputes hereunder shall be subject

15   to binding arbitration under the rules of the American Arbitration Association."  Consulting

16   Agreement ¶ 16, ECF No. 1-1.  Without explicitly stating so, Defendants appear to take the

17   position that all of the claims are subject to arbitration.  Resp. 2:11–12, ECF No. 13 ("In this

18   case, as outlined in the Plaintiffs' own Complaint, this matter is subject to a mandatory binding

19   arbitration clause.").  In contrast, Plaintiffs content that, while there is a valid arbitration

20   agreement, all but one of the claims asserted by Plaintiffs are outside the scope of the arbitration

21   agreement.  Reply 4:3–14, ECF No. 16.

22          The Court interprets the word "hereunder" in the arbitration agreement to refer to

23   disputes arising under the Contract itself.  In Mediterranean Enterprises, Inc. v. Ssangyong

24   Corp., the Ninth Circuit Court of Appeals interpreted "arising hereunder" to be synonymous with

25   "arising under the Agreement."  708 F.2d 1458, 1464 (9th Cir. 1983).  The Court of Appeals

26   noted that, absent broadening language such as "relating to," "'arising hereunder' is intended to

27   cover a much narrower scope of disputes, i.e., only those relating to the interpretation and

28   performance of the contract itself."  Id.  The "any disputes hereunder" language here is of the

same limited scope as the "[a]ny disputes arising hereunder" language in Mediterranean Enterprises.  708 F.2d at 1461.

Accordingly, the Court must examine each claim to evaluate whether it arises under the Contract itself or is a matter independent of the Contract.  Broadly, pursuant to the Contract, Robert Craddock and Fun Club agreed to perform marketing services for OfferHubb.  More specifically, "OfferHubb engaged Craddock and Fun Club to market the OfferHubb network marketing opportunity to former affiliates of the Zeek Rewards multi-level marketing network and to other past and present affiliates of other multi-level marketing companies for which Craddock and Fun Club had contact information. . . .  [T]he contract required Craddock and Fun Club to perform the following services: assist in the development of a compensation plan for OfferHubb affiliates, introduce and market OfferHubb to former affiliates of Zeek Rewards and other multi-level marketing networks, assist in developing a sophisticated website for OfferHubb and create publicity and public relations outreach for OfferHubb . . . ."  Compl. ¶¶ 10, 11; accord Consulting Agreement ¶¶ 1–1.7.

The first (cybersquatting), second (trademark infringement), and fourth (trademark infringement) claims for relief are based on allegations that Defendants registered and misused an Internet domain name that included OfferHubb's distinctive and famous mark without permission.  Compl. ¶¶ 18, 24, 35.  The seventh (interference with economic relations) and tenth (defamation) claims for relief are based on allegations that Defendants published online and by phone false and disparaging statements about Plaintiffs.  ¶¶ 14, 15, 52, 65.  None of these alleged acts appear to have arisen under the Contract, rather these claims for relief—and the facts alleged in support of the claims—are entirely unaffected by either the absence or existence of the Contract.  Furthermore, the domain registration and the making of these statements are alleged to have taken place after the conclusion of the Contract.  Id. at ¶¶ 12, 15.  Accordingly, the first, second, fourth, seventh, and tenth claims for relief are both chronologically and topically beyond the scope of the Contract.

Similarly, the third (wrongful use of computer) and fifth and sixth (misappropriation of trade secret) claims for relief raise issues that are either primarily or wholly outside the scope of

the contract.  Despite alleging a contractual duty, Compl. ¶ 40, ECF No. 1, none of these claims for relief necessarily requires a contract, see Nev. Rev. Stat. § 205.4765 (describing the elements of unlawful use of computers); Frantz v. Johnson, 999 P.2d 351, 358 (2000) (describing the elements of misappropriation of trade secret).  Furthermore, while the alleged illicit computer file access, misuse of confidential lists, and other events allegedly giving rise to these causes of action may have occurred before, during, or after the time in which the Contract was in effect, see Compl. ¶¶ 13, 29, 31, 41, 48, ECF No. 1, this alleged conduct appears to relate, at most, peripherally to the Contract, and could have been accomplished even if the Contract did not exist.  Therefore, the third, fifth, and sixth claims do not arise under the Contract.

Plaintiffs stop just short of conceding that the eighth claim (breach of contract) is subject to arbitration.  Reply 4:4–5, 25–26 ("[T]en of the eleven claims in the Complaint do not arise under any contract including the agreement in question. . . . In fact, only one claim possibly is subject to arbitration– the breach of contract claim.").  However, the Court finds little difficulty in holding that the claim for breach of contract is a claim "relating to the interpretation and performance of the contract itself." Mediterranean Enterprises, 708 F.2d at 1464.

Alternatively, while the ninth claim (unjust enrichment) is arguably *related to* the Contract, the ninth claim does not—and in fact cannot—*arise under* the Contract.  In part, the ninth claim alleges,

> 62. Defendants have been unjustly enriched by accepting payments in the amount of $120,000 from OfferHubb and then failing to provide the services for which they were contracted to provide.
> 63. OfferHubb is entitled to a judgment against Defendants for their unjust enrichment at OfferHubb's expense in the amount of $120,000 paid by OfferHubb to them as payments for services which were never performed.

Compl. ¶¶ 61–63, ECF No 1.  However, a claim for unjust enrichment as a matter of law cannot arise under a contract.  Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975, 942 P.2d 182, 187 (1997) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."); see Mediterranean Enterprises, 708 F.2d at 1464–65 ("Count 8 sets forth a claim in quantum meruit . . . .  An action does not lie on an implied contract where there exists

between the parties a valid express contract which covers the identical subject matter.  Thus, by definition, count 8 does not directly relate to the interpretation and performance of the Agreement itself." (citations omitted)).  So, while the determination of the validity and any breach of the Contract may be a helpful or perhaps even necessary to evaluation of this claim, the ninth claim does not arise under the Contract.

Piercing the corporate veil, alleged as Plaintiffs' eleventh claim, is not a claim for relief but rather a theory of liability.  Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc., 185 F.3d 978, 985 (9th Cir. 1999) ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself."); see Nev. Rev. Stat. § 78.747; Deal v. 999 Lakeshore Ass'n, 579 P.2d 775 (1978).  As this theory of liability depends on the finding of organizational liability under one or more of the other ten claims for relief—and consequently may be much broader than the alleged breach of contract— the matter is not appropriate for arbitration compelled pursuant to the Contract.

In sum, arbitration of the eighth claim for breach of contract is compelled; all other claims may proceed in this Court.

### C.  Stay

Having determined that the breach of contract claim should be sent to arbitration, the Court must now determine whether to stay the non-arbitrable claims, pending the outcome of the arbitration proceedings.

Once the court has determined that a dispute falls within the scope of an arbitration agreement, the proceedings in the case as to the arbitrable issue must be stayed pending the completion of arbitration.  9 U.S.C. § 3 ("If any suit or proceeding be brought . . . upon any issue referable to arbitration . . . , the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .").  Accordingly, the eighth claim for relief (breach of contract) must be stayed.

However, the decision to stay the remaining non-arbitrable claims is within the Court's discretionary authority to control its docket.  See Moses H. Cone, 460 U.S. at 21 n.23; Am.

1  Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 97 (4th Cir. 1996).  Courts

2  generally proceed with the non-arbitrable claims when feasible.   See, e.g., Dean Witter

3  Reynolds, 470 U.S. at 225 (White, J., concurring) ("[T]he heavy presumption should be that the

4  arbitration and the lawsuit will each proceed in its normal course.").

5       Here, non-arbitrable claims predominate the case.  Furthermore, as discussed above, the

6  evaluation of several of these non-arbitrable claims will be entirely independent of the Contract

7  and consequently independent of any arbitrator's decisions regarding breach of the Contract.

8  Thus, expanding the mandatory stay to encompass the entire case is unnecessary and would be

9  inefficient.  However, as discussed above, the ninth claim (unjust enrichment) may depend in

10  whole or in part on the arbitrator's resolution of certain Contract issues, and the risk of

11  inconsistent results justifies a stay of that claim.

12       Accordingly, the court stays the eighth and ninth claims only, pending arbitration.

13

14       **D.  Attorney's Fees**

15       The Supreme Court has "long recognized a common-law exception to the general

16  'American rule' against fee-shifting—an exception, inherent in the power [of] the courts that

17  applies for willful disobedience of a court order or when the losing party has acted in bad faith,

18  vexatiously, wantonly, or for oppressive reasons."   Octane Fitness, LLC v. ICON Health &

19  Fitness, Inc., 134 S. Ct. 1749, 1758 (2014) (alteration in original) (citations omitted) (internal

20  quotation marks omitted).   Here, only one of Plaintiffs' claims is subject to mandatory

21  arbitration, and the Court does not find that the instigation of the instant lawsuit is in bad faith,

22  vexatious, wanton, or based on oppressive reasons.  The request for attorney's fees is denied.

23

24  **III.   Counter-Motion to Dismiss**

25       "The substance of the motion, not its form, controls its disposition."   Andersen v. United

26  States, 298 F.3d 804, 807 (9th Cir. 2002).  Though "counter-motion to dismiss" appears in the

27  title of Defendants' moving papers, Counter-Motion to Dismiss 1:20–22, ECF No. 15, in the

28  body of the motion, Defendants never actually argue for dismissal.   Furthermore, in their

conclusion, regarding the disposition of the case, the Defendants ask only for a stay pending arbitration. Id. at 5:16–18.  In sum, this motion is merely nominally a motion to dismiss, and, consequently, the Court denies the Counter-Motion to Dismiss as it has already addressed the issue of a stay.

## IV.      Motion for Leave to Amend Complaint and for Joinder of Additional Defendant

Plaintiffs have moved that the court permit them to amend the Complaint "to join Theordore [sic] F. Zentner as a party defendant, to amend the caption of the case accordingly, to add a paragraph with additional allegations against Defendants, and to correct the heading for one Claim of Relief." Mot. to Am. 2:1–4, ECF No. 12.  Here, the Motion to Amend was filed on March 14, 2014, approximately five weeks after the filing of the Complaint and almost eight weeks before the Scheduling Order, ECF No. 21, was issued.  Accordingly, this Court evaluates the motion to amend pursuant to Federal Rule of Civil Procedure 15.[3]

### A.  Legal Standard

Under Federal Rule of Civil Procedure 15, "A district court shall grant leave to amend freely 'when justice so requires.' . . . this policy is to be applied with extreme liberality." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (internal citations omitted) (internal quotation marks omitted); accord Fed. R. Civ. P. 15(a)(2).  A district court may consider "undue delay, bad faith, futility of amendment, and prejudice to the opposing party." Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973); accord Chudacoff v. Univ. Med. Ctr. of S. Nevada, 649 F.3d 1143, 1152 (9th Cir. 2011).  "While all these factors are relevant, the crucial factor is the resulting prejudice to the opposing party."  Howey, 481 F.2d at 1190; accord Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("Prejudice is the 'touchstone of the inquiry under rule 15(a).'" (citations omitted)).

"In conjunction with Rule 15, Rule 20, Fed.R.Civ.Pro., allows the permissive joinder of

---

[3] Once a scheduling order has been entered pursuant to Federal Rule of Civil Procedure Rule 16, the district court is to first apply the standards of Rule 16 rather than those of Rule 15. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir. 1992).

1    parties, and in particular of party defendants, . . . if there is asserted against (the defendants)

2    jointly, severally, or in the alternative, any right to relief in respect to or arising out of the same

3    transaction, occurrence, or series of transactions of occurrences and if any question of law or fact

4    common to all defendants will arise in the action."   Desert Empire Bank v. Ins. Co. of N. Am.,

5    623 F.2d 1371, 1374 (9th Cir. 1980) (alteration in original) (internal quotation marks omitted).

6    Rule 20 imposes two specific requirements: "(1) a right to relief must be asserted by, or against,

7    each plaintiff or defendant relating to or arising out of the same transaction or occurrence or

8    series of transactions or occurrences; and (2) some question of law or fact common to all parties

9    must arise in the action."   Id. at 1375.   Additionally, the Court should consider whether

10   "permissive joinder of a party will comport with the principles of fundamental fairness."   Id.

11   "[I]n exercising the discretion provided by Rules 15 and 20, courts have shown a strong liberality

12   in allowing parties to amend their pleadings when such amendments have satisfied the explicit

13   requirements of the rules."   Id. at 1375–76.

14

15          **B.  Discussion**

16          Plaintiffs' amendment meets the requirements of Rules 20 and 15.   Here, Plaintiffs'

17   request leave to amend to add one new defendant party, Theodore F. Zentner, to add paragraphs

18   with additional allegations, and to make corrections.   Mot. to Am. 2, ECF No. 12.   Plaintiffs

19   allege that, since filing, they learned that Zentner is a business associate of Defendants and was

20   involved in the actions alleged in the Complaint.   Id.   More specifically, "Plaintiffs have learned

21   that Mr. Zentner has been active with Robert and Sylvia Craddock in attempting to contact

22   affiliates of Plaintiff OfferHubb.net, Inc. and in participating with Robert and Sylvia Craddock in

23   the wrongful acts alleged in the Complaint."   Decl. of David Flynn ¶ 4, ECF No. 12.   Plaintiff's

24   amended complaint includes Zentner in all claims for relief except the eighth (breach of contract)

25   and eleventh (piercing the corporate veil—alter ego).   Exhibit A, ECF No. 12; see Reply 1. ECF

26   No. 16.

27          In response, Defendants oppose the motion to amend solely on the basis that they believe

28   the amendment "is being made to defeat the jurisdiction of the arbitration agreement."   Resp.

2:27–28, ECF No. 13.   The applicability and inapplicability of the arbitration agreement has already been discussed, above.   As the Moving Defendants do not claim any prejudice or other harm will be caused by the filing of the amended complaint, the Court will permit the filing of the proposed amended pleading.   For these reasons, the Court finds that the interest of justice is best served by permitting amendment of the complaint.

**V.      Conclusion**

For the foregoing reasons, **IT IS ORDERED** that Counter-Motion to Dismiss, ECF No. 14, is **DENIED**.

**IT IS FURTHER ORDERED** that Counter-Motion to Compel Arbitration, ECF No. 15, is **GRANTED IN PART** with regard to count eight and **DENIED IN PART** with regard to all other counts.

**IT IS FURTHER ORDERED** that the eighth and ninth claims only are stayed pending arbitration.

**IT IS FURTHER ORDERED** that the request for attorney's fees is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Amend, ECF No. 12, is **GRANTED**.   Plaintiffs shall have 14 days from this issuance of this order to file their amended complaint.

**DATED**: July 24, 2015.

_____
**RICHARD F. BOULWARE, II**
United States District Court Judge